[No. 3527. Decided December 3, 1900.]

C. W. YOUNG, *as Treasurer of the State of Washington, Appellant, v.* UNION SAVINGS BANK AND TRUST COMPANY *et al., Defendants,* GEORGE E. REED *et al., Appellants.*

BONDS—ALTERATION—RELEASE OF SURETIES.

The fact that the name of a proposed surety, which had been inserted in the body of a bond, was subsequently struck out by reason of his refusal to sign, would not exonerate the sureties on the bond, when it does not appear that they had signed in reliance upon the proposed surety being joined with them on the bond.

SAME—DELIVERY—AUTHORITY OF AGENT.

Where the cashier of a bank, in order to obtain a deposit therein of public moneys by a state treasurer, offers the treasurer a bond signed by the bank and certain sureties, which is refused because not signed also by the wives of the sureties, and a second bond is tendered, signed by all the sureties, except one, on the first bond, and their wives, and this bond also is refused by the treasurer because it failed to contain all the sureties who signed the first bond, the delivery by the cashier of both bonds and their acceptance by the treasurer would bind the sureties thereon, when it appears that the first bond had never been returned to the sureties, nor called for by them, but, during all the negotiations, had been allowed to remain in the hands of the cashier as their agent, and had been finally delivered for the purpose for which it had been originally executed.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge. Reversed.

*Pritchard & Haight,* for appellant Young:

If the obligee has no notice or knowledge that the signer of a bond signed the same conditionally, such signer is bound, notwithstanding the conditional signing. *Dair v. United States,* 16 Wall. 1; *Ferry v. King County,* 5

W.ash. 536; *Adams v. Bean,* 12 Mass. 137 (7 Am. Dec. 44); *Garvey v. Marks,* 134 Mo. 1.

A mere agreement or expectation on the part of the signer of a bond that something will be done before delivery to the obligee makes such principal his agent, and he relieve the signer from liability. *Whitaker v. Richards,* 134 Pa. St. 191 (19 Am. St. Rep. 684, 7 L. R. A. 749); *Gibbs v. Johnson,* 63 Mich. 674; *Russell v. Freer,* 56 N. Y. 67. A misrepresentation of an unexecuted intention does not relieve the surety. *Gage v. Lewis,* 68 Ill. 604; *Towle v. National Society,* 3 Giff. 42. Though a bond is written as if to be executed by two or more joint and several obligors and is executed by part only, yet it is valid against those who executed it, in the absence of a condition that it should not be delivered unless signed by the parties named as obligors. *Cutter v. Whittemore,* 10 Mass. 442; *Los Angeles v. Mellus,* 59 Cal. 444; *Mullen v. Morris,* 43 Neb. 596; *Wood v. Ogden,* 16 N. J. Law, 453; *Keyser v. Keen,* 17 Pa. St. 327; *Grim v. School Directors,* 51 Pa. St. 219.

Even where the condition on which the signer of a bond executes it is not performed, if, knowing of its delivery, he makes no objection, he is bound. *Johnson v. Weatherwax,* 9 Kan. 75; *Eureka Sandstone Co. v. Long,* 11 Wash. 161. Those who deliver the bond cannot object to its validity, that the signing was conditional. *Garvey v. Marks,* 134 Mo. 1. Here the trustees, through their subordinate, the cashier, delivered the bond.

A surety entrusting the principal with a bond for delivery to the obligee, makes such principal his agent, and he is bound by the bond in the condition in which it comes into the hands of the obligee. *King County v. Ferry,* 5 Wash. 536; *Doorley v. Farmers' & M. Lumber Co.,* 46 Pac. 195. It follows that, if a bond once tendered is

returned or rejected by the obligee, and subsequently is re-tendered by the principal and accepted by the obligee, the surety is bound, the principal being his agent and the agency continuing till delivery, unless expressly withdrawn. *Pequawket Bridge v. Mathes,* 8 N. H. 139 (26 Am. Dec. 737).

*Black & Edwards,* for appellant Swalwell.

*Bogle & Richardson* and *Frank H. Kelley,* for appellants Thorne and Gower:

The defects of the second bond were such as to put the plaintiff upon his inquiry, at least as to how many of the signers thereof would consent to be bound by it in its then defective condition, and such inquiry the plaintiff was bound to make of the signers themselves. *Deardorff v. Foresman,* 24 Ind. 481; *Morton v. Harvey,* 77 N. W. 808; *Middleboro National Bank v. Richards,* 55 Neb. 682; *Clarke v. Williams,* 61 Minn. 12; *Ward v. Churn,* 18 Grat. 801 (98 Am. Dec. 749); *Mullen v. Morris,* 43 Neb. 596; *Sacramento v. Dunlap,* 14 Cal. 423.

Nicol was a special agent with authority to do one specific act and one only, viz., to deliver to the obligee the obligation of the obligors. When the first bond was submitted by him to the plaintiff, who, after examination, rejected it, Nicol's authority as to that bond ended. *Respass v. Latham,* Busb. 138. Whether Nicol was the plaintiff's or the defendants' agent in the matter which arose subsequent to the proffer and rejection of the first bond, the plaintiff was bound to inquire as to Nicol's authority to redeliver the first bond. *Bleecker v. Satsop R. R. Co.,* 3 Wash. 77. It has been held that where an obligation in the form of a bond has been delivered by the principal obligor to the obligee and the obligee subsequently hands it back to the principal, with a request that

certain other signatures be obtained thereon, the obligee thereby constitutes the principal obligor his agent for the purpose of obtaining such signatures, and is bound to take notice of any fact which may thereafter occur in regard to the subject matter. *Newlin v. Beard,* 6 W. Va. 110.

The opinion of the court was delivered by

DUNBAR, C. J.—The plaintiff is now, and was at the time of the transactions hereinafter related, treasurer of the state of Washington. Early in the year 1897 the defendant, the Union Savings Bank & Trust Company of Tacoma, applied to him to receive a deposit of a portion of the state's money, and was informed by the plaintiff that such deposit would be made on condition that the bank gave him satisfactory security. Undertaking to comply with said demand, the bank offered to plaintiff a bond conditioned that it would well and truly pay on demand the money so deposited, or which might thereafter be deposited, by said C. W. Young as treasurer. The bond was in the sum of $75,000, and was executed by the bank as principal and by defendants Nicol, Thorne, Sprague, Reed, Gower, Swalwell, and Westland as sureties. Nicol, Thorne, Sprague, and Reed were trustees of the bank, Nicol was cashier, and Thorne vice-president. This bond not being satisfactory to the plaintiff, for the reason that the wives of the married sureties had failed to sign the same, it was returned to the bank for the purpose of securing such signatures. Thereafter the bank, through its cashier, Nicol, presented to the plaintiff a second bond, conditioned like the first, signed by all the signers of the first bond, excepting Swalwell, and also further signed by Minnie E. Nicol, wife of A. R. Nicol, Harriet N. Reed, wife of G. H. Reed, and M. S. Sprague, wife of Otis Sprague. This last bond was not signed by

Swalwell or his wife.  An objection to it for that reason was made by the plaintiff.  After some talk about the sufficiency of the bonds, Mr. Nicol produced both the first and second and delivered them to the plaintiff, saying: "I will deliver them both to you as security for the expected deposit.  This is the best we can do."  The treasurer retained them both, and, as he testifies, in consideration thereof and on the faith of both the bonds, made the deposit of $20,000 of said funds with the bank.  No portion of this deposit was withdrawn, and the whole was still with the bank when it failed, June 29, 1897, and no part of the deposit has since been paid.  This action was commenced by the plaintiff to recover against the bondsmen the amount signed by them as sureties on both bonds. The bank and Mr. and Mrs. Reed defaulted.  Afterwards A. R. Nicol consented that judgment be entered against him in the sum of $20,000, the amount of his obligation on both bonds.  General denials were interposed by Mr. and Mrs. Sprague.  Swalwell admitted the execution of the first bond, and denied that it was delivered, except for examination.  Westland admitted the signing of both bonds, but denied that they were delivered, except for examination.  He further alleged that he signed the second bond at the request of the bank on the understanding that the first bond was not to be used, and that without his knowledge or consent the bank delivered both bonds to plaintiff, but that this delivery was simply to enable plaintiff to select one of them, and no selection had been made. Thorne denies generally the execution and delivery of the bonds, and, as an affirmative defense, alleges that he signed the first bond conditionally with other sureties, assuming liabilities in the amount set opposite their respective names; that the acceptance of said bond was refused by the treasurer, and that he never authorized

the delivery of it; further, that he consented to execute the second bond on the condition that the sureties thereon should be bound in the full sum of $75,000; that William G. Swalwell and ———— Swalwell, his wife, whose names appeared in the body of the bond, should be bound as sureties thereon in the sum of $12,500; and that it was signed with the express understanding and agreement that it should not be delivered until the same should be signed by said Swalwell and wife. Gower's answer was identical with Thorne's. Replies to the affirmative defenses were tendered. The court gave judgment upon the first bond for the amount qualified in by the different sureties thereon, but held that the second bond was illegal and void for the reason that Swalwell had not signed the same. Both parties have appealed from the judgment of the court; the appeal of Otis Sprague and wife having been heretofore, on motion, dismissed.

The defendants maintain that the second bond was void for the reason announced by the court, that Swalwell and his wife, sureties in the body of the bond, and upon whose signing they relied, had not signed the bond, and that the erasure of their names was sufficient notice to put the treasurer upon inquiry; that the first bond was void and of no effect as to them because it had been rejected by the treasurer; and that, after such rejection, they had not authorized its redelivery to the treasurer. The contention of the treasurer is that judgment should have been given against the sureties on both the bonds in the amount justified to therein, for the reason that both bonds were tendered to the treasurer as security for the loan and were accepted as such by him. We think the court erred in holding the second bond illegal. It is undoubtedly the law that, if parties sign a bond with the express or implied agreement that it is to be signed by some-

body else, and they rely upon the signing of that other person, whose name appears in the body of the bond and who afterwards fails to sign the bond, they will be exonerated, if there is sufficient on the face of the bond to put the obligee of the bond upon inquiry. But that case does not arise here. While that issue is raised by the answers of Thorne and Gower, there is no evidence whatever to sustain it. Thorne does not undertake to testify to any such fact; and Nicol, the cashier of the bank, who acted for the bank and for Thorne, testifies that there was no such understanding. Thorne, it must be remembered, was one of the trustees and vice president of the bank, which had no president, and was in reality the president of the bank. They were undertaking to get this loan for the benefit of the bank, and Thorne must, from his position, have been cognizant of the circumstances leading up to the obtaining of the loan. Mr. Nicol's testimony was, "We all naturally signed and executed the bond, by reason of our interest." He testifies also that he consulted with Mr. Thorne about the matter and told him everything that it was necessary for him to know in the premises. Gower, it is stipulated, would have testified as did Thorne, but what little testimony he did give shows conclusively that he did not rely upon the signing by Swalwell or any one else. An excerpt from his testimony will show this conclusively:

"Well, I have not seen this bond since it was executed, until this moment, and it has rather gone out of my mind lately. I can't fix any date about it. I recollect the signing of it perfectly, but, beyond that, I don't know whether I signed before or after; I can't seem to think— there were two bonds and both were signed at the same place—both of them have got the same number of names, and at this distance it seems to be a matter—nothing to fix it by, you know, that I can now recall, whether I

signed my name after the other names, or whether they were all blanks, all but my name."

And in conclusion he says:

"I can't remember; I have had conversation on this matter at various times, on this Union Savings Bank matter, a good many times, with Mr. Thorne and Mr. Nicol and Mr. Bogle, Judge Crowley, and various other people,—Mr. Reed and various other people,—and I can't say who it was presented the bond to me; I do not know whether it was Mr. Thorne or Mr. Nicol, or both of them together, but I know I signed them, but the matter is not distinct enough in my mind to be able to testify to it."

From a reading of the whole record, we have no doubt that all the sureties signed just as Mr. Gower did, simply because they were asked to, to obtain the loan for the bank, and that the reliance upon Swalwell and his wife signing was an afterthought, suggested after the action was brought, when it appeared that the name of Swalwell had been erased; for Mr. Thorne testifies that he did not know that Swalwell and wife had not signed the bond until he noticed the erasure in the copy of the complaint which had been served upon him.

Upon the question of the validity of the first bond, it is insisted that Nicol had no authority from the sureties to redeliver, or to deliver again, that bond to the treasurer. This depends entirely upon the law of agency. It is insisted by counsel for appellant Thorne, in his brief, that, Nicol's agency being limited, it will be held to be more restricted than the power of a general agent. That is true, without question. But we think his power as a special agent is not shown by the testimony in this case to have been restricted or in any manner revoked. The simple fact that the bond was not accepted by the treasurer as full security for the loan does not constitute a rejection of the bond, and even if it had been rejected absolutely

when it was presented, and afterwards the agent had delivered it to Young and it had been accepted, the delivery would have been the act of the sureties. Nicol was not the agent of the treasurer. He was the agent of the sureties. The interest of the sureties was not only not identical with the interest of the treasurer, but it was antagonistic to his interest. If an agent is empowered by his principal to make a contract with a stranger, and in accordance with such authority the agent makes the offer agreed upon and it is refused, but afterwards, and before the authority of the agent is revoked, the stranger is again approached and the same proposition is submitted to him, which he accepts, it cannot be pleaded that there was want of authority on the part of the agent to enter into a contract. Agency does not rest upon so frail a tenure; and there is no substantial testimony in this case that Nicol was in any way divested of his authority in this matter. He was absolutely intrusted with the business in hand, which was to obtain this loan and to furnish such security for the purpose of obtaining it as was required by the treasurer. The first bond was a complete bond. It was good for all it purported to be good for; but it was thought by the treasurer not to be sufficient, not because there was anything wrong with the bond itself, but because the bondsmen were not good enough, in his opinion, to warrant the deposit. Subsequently the same objection was raised by him to the second bond. But, taking the two together, he thought that he would be amply secured for the loan; and Mr. Nicol, the agent of these parties who had executed both of these bonds and placed them in his care for the purpose of obtaining this loan, offered them both as security, to satisfy the treasurer. The treasurer accepted them as such, and the contract was complete. It must be borne in mind that the first bond

had never been returned to the sureties and had never been called for by them, but had, during all the time of these negotiations, been left in the hands of the agent. These bonds are complete on their face.  The sureties have made themselves responsible on the face of the bonds for the amounts set opposite their names, and the burden is upon them to show that they were not delivered to the treasurer for the purposes for which they purported to be delivered.  Having signed, executed, and delivered these bonds, and having signally failed to show any reasons why their contract should not be enforced, the judgment will be reversed, and the cause remanded with instructions to the lower court to enter a judgment in accordance with the prayer of the complaint.

REAVIS, FULLERTON and ANDERS, JJ., concur.